and should not be considered on remand. For the reasons stated herein, we reverse the judgment of the district court and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.

────────────────

State of Nebraska, appellee, v.
Shad M. Knutson, appellant.
___ N.W.2d ___

Filed August 15, 2014.    No. S-13-558.

1. **Criminal Law: Trial.** A motion for separate trial is addressed to the sound discretion of the trial court, and its ruling on such motion will not be disturbed in the absence of a showing of an abuse of discretion.
2. **Constitutional Law: Trial: Joinder.** A defendant has no constitutional right to a separate trial on different charges. Neb. Rev. Stat. § 29-2002 (Reissue 2008) controls the joinder or separation of charges for trial.
3. **Trial: Joinder: Appeal and Error.** Under Neb. Rev. Stat. § 29-2002 (Reissue 2008), whether offenses were properly joined involves a two-stage analysis in which an appellate court first determines whether the offenses were related and joinable and then determines whether an otherwise proper joinder was prejudicial to the defendant.
4. ____: ____: ____. To determine whether the charges joined for trial are of the same or similar character, an appellate court looks at the underlying factual allegations.
5. **Trial: Joinder: Proof.** A defendant opposing joinder of charges has the burden of proving prejudice.
6. **Trial: Joinder: Evidence: Jury Instructions.** No prejudice from joined charges usually occurs if the evidence is sufficiently simple and distinct for the jury to easily separate evidence of the charges during deliberations. This is particularly true when the trial court specifically instructed the jury to separately consider the evidence for each offense.
7. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.
8. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government.

9. **Constitutional Law: Search and Seizure: States.** The Fourth Amendment's protections are implicated whenever state action intrudes on a citizen's reasonable expectation of privacy.

10. **Constitutional Law: Search and Seizure.** Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.

11. **Constitutional Law: Search and Seizure: Search Warrants.** Under the Fourth Amendment, a warrant is not required to obtain telephone billing and toll records because obtaining them by subpoena does not constitute a search.

12. **Constitutional Law: Search and Seizure: States.** The violation of a state law restricting searches is insufficient to show a Fourth Amendment violation. The analysis turns on whether society recognizes an expectation of privacy deserving of the most scrupulous protection from government invasion.

13. **Constitutional Law: Statutes: Evidence.** Absent a constitutional violation, a court will normally suppress evidence obtained in violation of a rule or statute only if the governing law provides that remedy.

14. **Criminal Law: Convictions: Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

15. **Statutes: Appeal and Error.** An appellate court decides questions of statutory interpretation as a matter of law.

16. **Criminal Law: Statutes: Legislature: Intent.** A court gives penal statutes a sensible construction, considering the Legislature's objective and the evils and mischiefs it sought to remedy.

17. **Statutes.** Absent a statutory indication to the contrary, a court gives words in a statute their ordinary meaning.

18. **Criminal Law: Statutes: Words and Phrases: Appeal and Error.** An appellate court strictly construes penal statutes and does not supply missing words or sentences to make clear that which is indefinite or not there.

19. **Criminal Law: Statutes: Appeal and Error.** An appellate court will not apply a penal statute to situations or parties not fairly or clearly within its provisions.

20. **Criminal Law: Statutes.** Ambiguities in a penal statute are resolved in the defendant's favor.

21. **Trial: Presumptions.** Triers of fact may apply to the subject before them that general knowledge which any person must be presumed to have.

Appeal from the District Court for Douglas County: Duane C. Dougherty, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Connolly, J.

## I. SUMMARY

The State charged Shad M. Knutson with five counts of sexual assault and child abuse involving four minor girls: T.P., M.K., E.M., and E.A. A jury found Knutson guilty of the charges involving E.A., but acquitted him of the charges involving the other three girls. The issues are whether (1) a joint trial on the offenses was proper, (2) Knutson's cell phone records should have been suppressed because the State obtained them by subpoena, and (3) the evidence was sufficient to support Knutson's convictions. We conclude that the court properly joined the offenses and correctly denied Knutson's motion to suppress his cell phone records. And we conclude that the evidence was sufficient to support Knutson's convictions for child abuse and child enticement for an illegal sexual purpose under Neb. Rev. Stat. § 28-320.02 (Cum. Supp. 2012). We affirm.

## II. BACKGROUND

Knutson taught at a public middle school in Omaha, Nebraska. T.P., M.K., and E.M. were students of Knutson when the alleged misconduct occurred. E.A. was not one of Knutson's students at the school, though she had attended school there and knew him. When E.A. moved on to high school, Knutson tutored her during her freshman and sophomore years, the period during which the alleged misconduct occurred.

### 1. Complaining Witnesses' Reports and Subsequent Investigation

In November 2009, T.P. reported Knutson to school officials for sexually inappropriate conduct. Following an internal investigation, school officials determined that there was no substance to T.P.'s allegations and she was moved to a

different school. In December, M.K. reported Knutson to school officials for sexually inappropriate conduct. While conducting an investigation, Knutson was put on leave, but once school officials concluded there was no criminal conduct, they allowed him to return to teach. School officials did not forward either T.P.'s or M.K.'s allegations to the police.

In October 2010, E.M. reported Knutson to school officials for sexually inappropriate conduct. Soon after, E.M.'s mother reported Knutson to Child Protective Services, which led to a police investigation. During the investigation, E.A.'s name came up and police interviewed her. She initially denied any relationship or anything inappropriate happening between her and Knutson. But investigators obtained Knutson's cell phone records, which revealed that he had thousands of telephone contacts with E.A. When confronted with the cell phone records, and after seeing Knutson on the news, E.A. admitted to prosecutors that she and Knutson had been in a relationship.

## 2. Charges and Pretrial Motions

The State charged Knutson with sexual assault and child abuse involving the four girls. Before trial, Knutson moved to sever the charges. In his motion, Knutson argued that the charges were not joinable under Neb. Rev. Stat. § 29-2002(1) (Reissue 2008) and that, even if they were, joinder would prejudice him. But the court determined that the charges were of the same or similar character and that evidence of the alleged acts would be admissible against Knutson in separate trials. The court denied Knutson's motion to sever.

Before trial, Knutson also moved to suppress his cell phone records, which the State had obtained by subpoena. In his motion, Knutson argued that the State's use of subpoenas was improper because it violated both his constitutional right to be free from unreasonable searches and seizures and Nebraska statutory law. The court concluded, however, that because Knutson had no expectation of privacy in the records, the State's subpoenaing them did not violate Knutson's Fourth Amendment rights. And the court concluded that the State's

use of subpoenas to obtain the records complied with state statutes. It overruled Knutson's motion to suppress.

### 3. Trial Testimony, Jury Verdicts, and Sentencing

Although the jury found Knutson guilty only of the charges involving E.A., it is necessary to summarize the testimony related to the other charges because it is relevant to the joinder issue. T.P. testified that Knutson would tell her she was pretty and beautiful, that he would ask her about her breasts and whether he could feel them, and that he later threatened to lower her grades if she did not show him her breasts. T.P. also testified about incidents when she participated on the football team and when she was a manager for the basketball team. Knutson coached both teams. T.P. testified that Knutson had asked her for oral sex and that he had "put his gym shorts, like, right up to [her] face." T.P. eventually told her stepmother and reported Knutson to school officials. Initially, however, T.P. did not report all the facts that she later stated at trial.

M.K. testified that during class, Knutson took her cell phone, looked through her cell phone pictures, and pointed to one and said, "'I like this one'" or "'I like these,'" which M.K. took to mean her breasts. M.K. also testified that she asked Knutson for help while struggling with a test after school. M.K. testified that Knutson told her that "'[a] picture of you will get you a B.'" And M.K. testified that the next day, Knutson asked for her cell phone again and that she refused. This led to her being referred to the administrator's office, where M.K. eventually reported Knutson.

E.M. testified that she and Knutson were close and that he called her "sexy," beautiful, and pretty. E.M. testified that Knutson had brushed her breasts with his hand, that he had patted her hip, and that he had made sexually inappropriate comments and gestures. For example, E.M. testified that one day she whispered to Knutson that his zipper was down and that he told her if she ever wanted to see "it," all she had to do was ask. E.M. did not report Knutson immediately because she was

scared, but she did end up reporting him to school officials, though she did not provide the same level of detail as she did at trial. Her mother called Child Protective Services, which led the police to become involved.

E.A. testified that although she was never a student in Knutson's class, she knew him from her time at the middle school. She testified that the summer before her freshman year in high school, she worked at the middle school teaching swimming and that she grew close to Knutson. She explained that during the second semester of her freshman year, she approached Knutson about tutoring her, which he agreed to do. Knutson tutored her after school in his classroom, several times a week. This arrangement continued into E.A.'s sophomore year. E.A. testified that their relationship was much more than that of a tutor and student.

At some point during this period, E.A. told Knutson that she had feelings for him, and she testified that he told her he also had feelings for her. She testified that their relationship turned physical and that it involved touching, hugging, and kissing. She explained that as the relationship became more serious, he would touch her chest and genital area and she would do the same to him. The physical interactions apparently always occurred in Knutson's classroom, after school. E.A. testified that she and Knutson would talk or text every day, all day, and that she told him she loved him and that he also told her he loved her. They agreed several times, over the telephone and in person, that they were both ready to "take it to the next level," which she testified meant having sex, although they never actually had sexual intercourse. E.A. also testified that Knutson asked her for "sexy" pictures of herself and that she sent to him a picture of her breasts covered with a bra.

Other witnesses also testified, including teachers and administrators from the middle school and the Omaha Public School District. The testimony covered the school's physical layout, including classroom configurations, the school's investigation policy at the time (internal investigations by the human resources department are not always reported to police), and the school's actual investigations of the girls' allegations. The testimony covered teaching methods, coaching responsibilities,

and rules and practices regarding cell phone use at school. A crime analyst also testified regarding the cell phone records and contacts between E.A. and Knutson. In short, the analyst explained that there were over 26,000 telephone contacts between the two in about a year's time and that the contacts occurred nearly every day and at all hours of the day, including early morning and late at night.

The jury acquitted Knutson of the charges involving T.P., M.K., and E.M. But the jury convicted Knutson of the charges involving E.A., which included child abuse and child enticement for an illegal sexual purpose through the use of an electronic communication device. The court sentenced Knutson to 8 to 12 years in prison for the child enticement conviction and 1 to 2 years in prison on the child abuse conviction, with the sentences to run consecutively. The court also ordered Knutson to register as a sex offender.

## III. ASSIGNMENTS OF ERROR

Knutson assigns, restated and consolidated, that the district court erred in (1) denying Knutson's motion to sever the charges and joining them all in a single trial and (2) denying Knutson's motion to suppress the cell phone records because the State violated his Fourth Amendment rights and because the State's subpoenas did not comply with Nebraska statutory law. Knutson also argues that the evidence was insufficient to support his convictions.

## IV. ANALYSIS

### 1. Joinder

Knutson argues the charges involving E.A. should have been tried separately from the charges involving the other three girls. According to Knutson, the charges were not joinable under § 29-2002(1) and, even if they were, severance was necessary under § 29-2002(3) because the joinder was prejudicial to him. We disagree. We conclude that the charges were joinable under § 29-2002(1) because they were "of the same or similar character." And our review of the record convinces us that no prejudice arose from the joinder. We find no error in the court's conducting a single trial on the charges.

(a) Standard of Review

[1] A motion for a separate trial is addressed to the sound discretion of the trial court, and its ruling on such motion will not be disturbed in the absence of a showing of an abuse of discretion.[1]

(b) Analysis

[2] A defendant has no constitutional right to a separate trial on different charges.[2] Instead, § 29-2002 controls the joinder or separation of charges for trial. That section states, in relevant part:

> (1) Two or more offenses may be charged in the same indictment, information, or complaint . . . if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
>     . . . .
> (3) If it appears that a defendant or the state would be prejudiced by a joinder of offenses . . . for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

[3] Under § 29-2002, whether offenses were properly joined involves a two-stage analysis in which we first determine whether the offenses were related and joinable and then determine whether an otherwise proper joinder was prejudicial to the defendant.[3]

We first set out the relevant charges. For E.A., the State charged Knutson with violating § 28-320.02 and child abuse.[4] Section 28-320.02 is Nebraska's prohibition of child enticement

---

[1] *State v. Schroeder*, 279 Neb. 199, 777 N.W.2d 793 (2010).

[2] See *id*.

[3] See, *id*.; *State v. Hilding*, 278 Neb. 115, 769 N.W.2d 326 (2009).

[4] Neb. Rev. Stat. § 28-707 (Reissue 2008).

through an electronic communication device. For T.P. and E.M., the State charged Knutson with third degree sexual assault of a child.[5] And for M.K., the State charged Knutson with child abuse.[6]

[4] The first question is whether the charges were properly joined under § 29-2002(1). We agree with the State that the charges were "of the same or similar character." It is true they do not all fall under the same statute, but that is only one factor to be considered.[7] Under our case law, to determine whether the charges joined for trial are of the same or similar character, we look at the underlying factual allegations.[8] Here, as the district court found, significant similarities exist between the facts underlying the charges. For example, each of the girls attended the middle school at some point, they were similar in age when the alleged misconduct occurred, and Knutson occupied positions of trust (teacher, tutor, coach) with each of the girls, which positions he allegedly abused. And the allegations all involved illegal sexual conduct. We conclude that the charges were "of the same or similar character" and joinable under § 29-2002(1).

But Knutson argues that our decision in *State v. Rocha*[9] commands a different conclusion. In *Rocha*, we addressed whether joinder of a sexual assault charge was proper with child abuse charges and, as relevant here, whether the charges were of the same or similar character. In concluding that they were not, we emphasized that "sexual assault, on its face, is sexual in nature, whereas child abuse is not."[10] That statement

---

[5] Neb. Rev. Stat. § 28-320.01 (Reissue 2008).

[6] § 28-707.

[7] See, *State v. Rocha*, 286 Neb. 256, 836 N.W.2d 774 (2013); Wayne R. LaFave et al., Criminal Procedure § 17.1(b) (5th ed. 2009).

[8] See, e.g., *State v. Freeman*, 253 Neb. 385, 571 N.W.2d 276 (1997); *State v. Lewis*, 241 Neb. 334, 488 N.W.2d 518 (1992); *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989). See, also, *State v. Sanders*, 15 Neb. App. 554, 733 N.W.2d 197 (2007).

[9] *Rocha*, *supra* note 7.

[10] *Id*. at 267, 836 N.W.2d at 782.

may have been imprecise; of course, the crime of child abuse may encompass factual situations which are sexual in nature. For example, "[a] person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be . . . (e) Placed in a situation to be sexually abused . . . ."[11] Our point in *Rocha*, however, was that the child abuse charges there (outside of the charge involving the alleged victim of the sexual assault charge) all involved purely physical conduct, with no sexual purpose.[12] But here, each charge, whether sexual assault or child abuse, was sexual in nature. And that is a critical distinction.

[5] The next question is whether the otherwise proper joinder prejudiced Knutson.[13] A defendant opposing joinder of charges has the burden of proving prejudice.[14]

We recently pointed out in *State v. Foster*[15] that Fed. R. Crim. P. 14(a) is the federal equivalent of § 29-2002(3). Like § 29-2002(3), rule 14(a) permits a federal court to order separate trials for charged offenses or codefendants if it appears that joinder will prejudice either party. We concluded that because of the similarities between rule 14(a) and § 29-2002(3), we will look to federal case law for guidance in determining when severance should be granted.[16]

In *Foster*, the defendant argued that he was prejudiced by the court's refusal to order a separate trial for his codefendant. We stated that under rule 14(a), to prevail on a severance argument, a defendant "'must show "compelling, specific, and actual prejudice from [the] court's refusal to grant the motion to sever."'"[17] That is, "'a defendant must show that the

---

[11] § 28-707(1).

[12] See *Rocha, supra* note 7.

[13] See *Schroeder, supra* note 1.

[14] See *State v. Garza*, 256 Neb. 752, 592 N.W.2d 485 (1999).

[15] *State v. Foster*, 286 Neb. 826, 839 N.W.2d 783 (2013).

[16] See *id*.

[17] *Id*. at 837, 839 N.W.2d at 795, quoting *U.S. v. Driver*, 535 F.3d 424 (6th Cir. 2008).

joint trial caused him such compelling prejudice that he was deprived of a fair trial.'"[18] Finally, we stated that even when the risk of prejudice is high, a court's limiting instructions "'often will suffice to cure any risk of prejudice.'"[19]

Federal courts apply the same standards to review a court's order overruling a request to sever charged offenses. Generally, the defendant must show that the court's refusal to sever the offenses caused severe and specified prejudice in his or her trial, not merely a better chance of acquittal in separate trials.[20] Moreover, "'absent a showing of substantial prejudice, spillover of evidence from one [count] to another does not require severance.'"[21]

[6] The Eighth Circuit has stated that "'[s]evere prejudice occurs when a defendant is deprived of an *appreciable* chance for an acquittal, a chance that [the defendant] would have had in a severed trial.'"[22] But it also applies a "'strong presumption against severing properly joined counts.'"[23] As we have previously held, prejudice is not shown if evidence of one charge would have been admissible in a separate trial of another charge.[24] Additionally, federal courts hold that prejudice usually does not occur from joined charges if the evidence is sufficiently simple and distinct for the jury to easily separate evidence of the charges during deliberations. This is particularly true when the trial court specifically instructed the jury to separately consider the evidence for

---

[18] *Id*., quoting *U.S. v. Hill*, 643 F.3d 807 (11th Cir. 2011).

[19] *Id*. at 838, 839 N.W.2d at 796, quoting *Zafiro v. United States*, 506 U.S. 534, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993).

[20] See, *U.S. v. Davis*, 724 F.3d 949 (7th Cir. 2013); *U.S. v. Riley*, 621 F.3d 312 (3d Cir. 2010); *U.S. v. Saadey*, 393 F.3d 669 (6th Cir. 2005). See, also, *United States v. Lane*, 474 U.S. 438, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986).

[21] *U.S. v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006).

[22] *U.S. v. Garrett*, 648 F.3d 618, 625-26 (8th Cir. 2011) (emphasis supplied).

[23] *Id*. at 626.

[24] See, e.g., *Schroeder, supra* note 1.

each offense.[25] We agree with this reasoning and have previously applied it.[26]

Here, we need not consider whether the evidence of each charge would have been admissible in separate trials. The evidence supporting each charge was simple and distinct from the evidence of other offenses. In other words, the jury could separate the charges and associated evidence, without combining evidence of other charges to find guilt on a charge that it would not have found if the court had ordered separate trials. Moreover, the judge specifically instructed the jury that it was to keep the charges separate and come to a separate decision regarding each charge. Absent evidence to the contrary, a jury is presumed to follow its instructions.[27] But most important, here there is more than simply a presumption that the jury followed its instructions; the record shows that it actually did do so. The jury found Knutson guilty of the charges involving E.A., but acquitted him of the charges involving the other three girls. Because the jury's verdicts show that it actually separated the evidence and offenses, Knutson has not shown prejudice from the joinder.[28]

## 2. Motion to Suppress

Knutson argues that the court erred in denying his motion to suppress his cell phone records. Knutson argues that he had a reasonable expectation of privacy in the records and that the State violated his constitutional rights by obtaining the records by subpoena. Knutson also argues that the State's use of subpoenas violated Nebraska statutory law. We conclude, however, that Knutson had no reasonable expectation of privacy in the

---

[25] See, *U.S. v. Jimenez*, 513 F.3d 62 (3d Cir. 2008); *Closs v. Leapley*, 18 F.3d 574 (8th Cir. 1994); *Unites States v. Halper*, 590 F.2d 422 (2d Cir. 1978); *Robinson v. United States*, 459 F.2d 847 (D.C. Cir. 1972).

[26] See *Lewis, supra* note 8 (citing *State v. Nance*, 197 Neb. 95, 246 N.W.2d 868 (1976), *disapproved on other grounds, State v. Sanders*, 235 Neb. 183, 455 N.W.2d 108 (1990)).

[27] See *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013).

[28] See, *Jimenez, supra* note 25; *United States v. Hastings*, 577 F.2d 38 (8th Cir. 1978).

records and therefore no Fourth Amendment claim. We also conclude that regardless whether the State violated statutory law, suppression was not an available remedy because there was no constitutional interest at stake and the statutes themselves did not provide for it.

### (a) Standard of Review

[7] In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review.[29] Regarding historical facts, we review the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination.[30]

### (b) Analysis

[8] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government.[31] But Knutson has not raised the Nebraska Constitution here. His claim is that the county attorney's subpoena of his cell phone calls and text messages violated the Fourth Amendment to the U.S. Constitution.

[9,10] The Fourth Amendment's protections are implicated whenever state action intrudes on a citizen's reasonable expectation of privacy.[32] "'Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'"[33]

---

[29] *State v. Schuller*, 287 Neb. 500, 843 N.W.2d 626 (2014).

[30] *Id*.

[31] *State v. Matit, ante* p. 163, 846 N.W.2d 232 (2014).

[32] See, e.g., *California v. Ciraolo*, 476 U.S. 207, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986); *In re Interest of Corey P. et al*., 269 Neb. 925, 697 N.W.2d 647 (2005).

[33] *United States v. Jacobsen*, 466 U.S. 109, 123 n.22, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984).

We first clarify that the cell phone records in evidence comprise billing information and toll records,[34] detailing the destination number and times for calls or text messages that Knutson sent or the source number and times for calls and text messages that he received. We acknowledge that the subpoenas were broad enough to obtain the contents of Knutson's communications, but the record does not include such evidence or show that the State received this information.

So, in arguing that the county attorney could not obtain these records through a subpoena, Knutson relies on cases that are distinguishable. We disagree that this issue is controlled by cases involving a warrantless search of a person's cell phone itself to obtain call logs or content information,[35] or cases in which the prosecution subpoenaed the contents of a suspect's communications.[36]

[11] Instead, the issue is governed by *Smith v. Maryland*.[37] There, the U.S. Supreme Court held that law enforcement officers do not need a warrant to have a telephone company install a pen register to record the numbers dialed from a person's telephone because it is not a search under the Fourth Amendment. That is, because pen registers disclose only the telephone numbers dialed and customers largely know that the telephone company keeps these records, a person has no subjective expectation of privacy in the records of the numbers dialed—as distinguished from the content of the communications. So, under the Fourth Amendment, a warrant is not required to obtain telephone billing and toll records because obtaining them by subpoena does not constitute a search.[38]

---

[34] See *U.S. v. Green*, 698 F.3d 48 (1st Cir. 2012).

[35] See, *U.S. v. Gomez*, 807 F. Supp. 2d 1134 (S.D. Fla. 2011); *U.S. v. Quintana*, 594 F. Supp. 2d 1291 (M.D. Fla. 2009); *State v. Smith*, 124 Ohio St. 3d 163, 920 N.E.2d 949 (2009).

[36] See *State v. Clampitt*, 364 S.W.3d 605 (Mo. App. 2012).

[37] *Smith v. Maryland*, 442 U.S. 735, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979).

[38] See, e.g., *U.S. v. Moody*, 664 F.3d 164 (7th Cir. 2011); *Rehberg v. Paulk*, 611 F.3d 828 (11th Cir. 2010); *State v. Marinello*, 49 So. 3d 488 (La. App. 2010); *State v. Johnson*, 340 Or. 319, 131 P.3d 173 (2006).

Alternatively, Knutson argues that the county attorney did not comply with Neb. Rev. Stat. § 86-2,106 (Reissue 2008) in subpoenaing his cell phone records. Section 86-2,106 is one of several statutes under the heading "Intercepted Communications."[39] Section 86-2,106 sets out the requirements for obtaining from a service provider the stored contents of electronic communications or its noncontent records.

Under § 86-2,106, subsection (1) requires a government entity to present a warrant to obtain the contents of electronic communications that the provider has stored for 180 days or less. Subsection (3)(a)(ii) provides that absent a subscriber's consent, a service provider may disclose noncontent records to a government entity only when presented with a court order, warrant, or administrative subpoena. Knutson argues that a county attorney is not a state agency and cannot issue an administrative subpoena.

Knutson notes that in 2008, the Legislature amended Neb. Rev. Stat. § 81-119 (Reissue 2008) to provide that state agencies cannot use their subpoena power for criminal investigations.[40] He recognizes that in the same bill, the Legislature amended § 86-2,112, as a compromise, to permit the attorney general or a county attorney to "require the production" of the following items: "books, papers, documents, and tangible things which constitute or contain evidence relevant or material to the investigation or enforcement of the laws of this state when it reasonably appears that such action is necessary and proper." But he argues that the Legislature did not amend § 86-2,106. Because § 86-2,106 is more specific to the production of electronic communication records than § 86-2,112, he contends that § 86-2,112 does not permit a county attorney to issue an investigative subpoena to require the production of these records. He contends that through § 86-2,106, the Legislature created an expectation of privacy in these records.

---

[39] See Neb. Rev. Stat. §§ 86-271 to 86-2,115 (Reissue 2008 & Cum. Supp. 2012).

[40] See 2008 Neb. Laws, L.B. 952.

[12] But even if Knutson were correct, the violation of a state law restricting searches is insufficient to show a Fourth Amendment violation.[41] The analysis turns on whether society recognizes an expectation of privacy deserving of "'the most scrupulous protection from government invasion.'"[42] Notably, § 86-2,106(3)(a)(i) permits a service provider to disclose non-content records to any person except a governmental entity. This provision seriously undercuts Knutson's claim that the statute creates an expectation of privacy in such records. More important, under *Smith*, Knutson cannot show a societal expectation of privacy in the records.

[13] Absent a constitutional violation, a court will normally suppress evidence obtained in violation of a rule or statute only if the governing law provides that remedy.[43] It is true that § 86-2,115 provides for the suppression of the "contents of any intercepted wire or oral communication," and any evidence derived therefrom, "if the disclosure of that information would be in violation of [the intercepted communications statutes]." But we are not dealing with intercepted communications[44] or the *contents* of any communications. No other intercepted communications statute suppresses evidence for a violation of its provision. So, even if Knutson correctly argues that a county attorney must comply with § 86-2,106, the Legislature provided no remedy for a violation. In keeping with the general principle that courts do not lightly impose a judicial exclusionary remedy,[45] we decline to find suppression appropriate in these circumstances.

---

[41] See *California v. Greenwood*, 486 U.S. 35, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988).

[42] *Id.*, 486 U.S. at 43.

[43] See, e.g., *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 126 S. Ct. 2669, 165 L. Ed. 2d 557 (2006); *U.S. v. Abdi*, 463 F.3d 547 (6th Cir. 2006); *U.S. v. Thompson*, 936 F.2d 1249 (11th Cir. 1991); *Upshur v. State*, 208 Md. App. 383, 56 A.3d 620 (2012).

[44] See § 86-280.

[45] See *Sanchez-Llamas, supra* note 43.

### 3. Sufficiency of the Evidence

Knutson argues that the evidence was insufficient to convict him of child abuse and child enticement for an illegal sexual purpose through the use of an electronic communication device. We disagree.

### (a) Standard of Review

[14] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: We do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[46]

### (b) Analysis

#### (i) Child Enticement Conviction

Regarding the child enticement conviction, § 28-320.02(1), in relevant part, provides the following:

> No person shall knowingly solicit, coax, entice, or lure (a) a child sixteen years of age or younger or (b) a peace officer who is believed by such person to be a child sixteen years of age or younger, by means of an electronic communication device as that term is defined in section 28-833, to engage in an act which would be in violation of section 28-319, 28-319.01, or 28-320.01 or subsection (1) or (2) of section 28-320.

The State's operative information alleged that between January 1 and November 19, 2010, Knutson used an electronic communication device to solicit, coax, lure, or entice E.A., a child under the age of 16 years, to engage in an act which would constitute a violation of Neb. Rev. Stat. §§ 28-319, 28-319.01, 28-320.01, or 28-320(1) and (2) (Reissue 2008 & Cum. Supp. 2012). But the jury was instructed to find

---

[46] *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013).

whether Knutson had enticed E.A. to engage in acts that would constitute the crime of first degree sexual assault. The crime of first degree sexual assault, as relevant here, is codified in § 28-319.01(1)(b):

> (1) A person commits sexual assault of a child in the first degree:
>
> . . . .
>
> (b) When he or she subjects another person who is at least twelve years of age but less than sixteen years of age to sexual penetration and the actor is twenty-five years of age or older.

Knutson agrees the State is not required to show he sexually penetrated a child under the age of 16 years to prove a violation of § 28-320.02, the child enticement statute. But he argues that the State cannot prove he violated § 28-320.02 unless it shows that he had a specific plan to sexually penetrate E.A. before she turned 16 years of age in December 2010:

> [I]f the plan was to make love after she turned 16 then there is no violation of 28-319 and therefore no violation of 28-320.02. Merely discussing, in vague terms, the desire to "make love" at some unspecified time in the future does not rise to the level of conduct necessary to prove an intent to violate 28-319[.01].[47]

[15] The State counters that the evidence showed Knutson had explicit conversations with E.A. about acts which constituted sexual penetration and that E.A. had agreed they should "take it to the next level," meaning that they should engage in sexual penetration. These conflicting arguments present a question of statutory interpretation, which we decide as a matter of law.[48]

[16-20] We give penal statutes a sensible construction, considering the Legislature's objective and the evils and mischiefs it sought to remedy.[49] Absent a statutory indication to the contrary, we give words in a statute their ordinary

---

[47] Brief for appellant at 48-49.

[48] See *State v. Thacker*, 286 Neb. 16, 834 N.W.2d 597 (2013).

[49] *Id.*

meaning.[50] But we strictly construe penal statutes and do not supply missing words or sentences to make clear that which is indefinite or not there.[51] We will not apply a penal statute to situations or parties not fairly or clearly within its provisions.[52] Ambiguities in a penal statute are resolved in the defendant's favor.[53]

As relevant here, the conduct prohibited by § 28-320.02(1) is using an electronic communication device to knowingly "solicit, coax, entice, or lure" a child 16 years of age or younger "to engage in an act which would be in violation of" § 28-319.01. The verbs in this sentence all deal with the act of persuading—in this context, persuading someone 16 years of age or younger to perform a sexual act that is illegal under the specified statutes.

It is true that in two of our cases dealing with undercover officers posing as girls under the age of 16 years, the officers waited to arrest the defendant until he had arranged a meeting and attempted to meet the minor for illegal sexual activity.[54] But those cases do not show that a crime does not occur unless the defendant arranges a meeting with a minor and the contemplated sexual activity is illegal at that time. Knutson misinterprets our decision in *State v. Rung*[55] to support his position that the defendant must have specifically planned to sexually penetrate a minor before he or she turned 16 years of age.

In *Rung*, the defendant argued that § 28-320.02 was unconstitutionally overbroad because it criminalized enticing a child 16 years of age or younger to engage in sexual conduct, even if it would not be illegal for the person to engage in such conduct with the child. For example, he claimed that under

---

[50] See *State v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013).

[51] See *Thacker, supra* note 48.

[52] *Id*.

[53] *Id*.

[54] See, *State v. Rung*, 278 Neb. 855, 774 N.W.2d 621 (2009); *State v. Pischel*, 277 Neb. 412, 762 N.W.2d 595 (2009).

[55] See *Rung, supra* note 54.

§ 28-320.02, a 19-year-old could be prosecuted for enticing a 16-year-old to engage in sexual penetration, even though the conduct would only be illegal if the child were under the age of 16 years. We rejected this argument:

> By its terms, § 28-320.02 specifically refers to enticing a child "to engage in an act which would be in violation of section 28-319, 28-319.01, or 28-320.01 or subsection (1) or (2) of section 28-320." Therefore, one can violate § 28-320.02 only if the contemplated sexual conduct would be in violation of one of the specified statutes. If one uses a computer to entice a person 16 years of age or younger to engage in an act that would not be in violation of any of the specified statutes, then that person has not violated § 28-320.02.[56]

But the defendant in *Rung* did not raise the argument presented here. And nothing in this passage implies that we will look to the legality of the defendant's contemplated sexual act at the time that he or she arranged a meeting with the child. More important, nothing in § 28-320.02 requires the State to prove that the defendant took a substantial step toward committing an illegal sexual act. It is not an attempt statute.[57] Instead, the statute unambiguously criminalizes the persuasion itself. Because the statute is focused on persuading a child to engage in an illegal sexual act, the relevant time for determining whether the encouraged sexual act illegal will generally be when the defendant was engaged in the persuasion. But depending upon the substance of the persuasion, this may not always be true. Here, the facts do not warrant requiring further proof of the defendant's intent to commit an illegal sexual act.

Viewing the evidence in the light most favorable to the State, the record shows that Knutson discussed sex multiple times with E.A. and asked her about her sexual preferences. She further stated that they both agreed, in person and over the telephone, they wanted "to take it to the next level." E.A. testified that the "next level" meant to "make love."

---

[56] *Id*. at 861-62, 774 N.W.2d at 629.

[57] Compare Neb. Rev. Stat. § 28-201 (Reissue 2008).

E.A. stated that her conversations with Knutson about tak-
ing it to the next level occurred near the end of her contacts
with him. She testified that her "phone contact" with Knutson
ended sometime before she was interviewed by police officers,
which occurred on November 19, 2010. When asked whether
Knutson had explained why he stopped his telephone contacts,
E.A. said Knutson told her many things, including that he had
brain cancer. An exhibit documenting her telephone contacts
with Knutson shows that the calls dropped off dramatically in
October 2010.

This evidence was sufficient to support a finding that
Knutson had ended his relationship with E.A. by the time she
was interviewed by police officers. Because E.A. testified that
their conversations about taking it to the next level occurred
before the relationship ended, the jurors could rationally infer
that while E.A. was 15 years of age, Knutson encouraged her
to engage in sexual penetration with him and that she agreed to
do so. We conclude that the evidence was sufficient to support
Knutson's conviction under § 28-320.02.

### (ii) Child Abuse Conviction

The jury instruction for the child abuse charge permitted
the jury to find Knutson guilty of child abuse if it found that
he had knowingly and intentionally caused or permitted E.A.
to be placed in a situation (1) that endangered her mental
health; (2) to be sexually exploited by allowing, encouraging,
or forcing her to solicit for or engage in obscene or porno-
graphic photography, films, or depictions; or (3) to be sex-
ually abused.

The jury instruction reflects the State's alternative theories
of child abuse, which correspond, respectively, to subsections
(a), (d), and (e) of § 28-707(1). Knutson did not object to this
instruction at trial. The jury could convict if it found Knutson
had committed any of the three acts prohibited by § 28-707. So
the judgment must be affirmed if it was sufficient to support
any of the State's three theories of guilt.[58]

---

[58] See *State v. Eagle Bull*, 285 Neb. 369, 827 N.W.2d 466 (2013).

[21] We conclude that the evidence was sufficient to support a finding under § 28-707(1)(a) that Knutson placed E.A. in a situation that endangered her mental health. We disagree the State "presented absolutely no evidence" in that regard, or that the State's claim "demonstrates the lengths to which [it] will stretch logic and credulity to somehow turn [Knutson's] actions into criminal behavior."[59] In interpreting a different subsection of § 28-707(1), we recently stated that "[t]riers of fact may apply to the subject before them that general knowledge which any person must be presumed to have."[60] We believe that it is within the general knowledge of triers of fact that a sexually charged relationship between a young, 15-year-old girl and a man in his 30's, who holds a position of trust in the girl's life, puts that girl's mental health at risk. Because the evidence was sufficient to show a violation of § 28-707(1)(a), we do not consider whether it was sufficient to support the State's alternative theories of guilt.

## V. CONCLUSION

We find no merit to Knutson's assigned errors regarding the court's joining the offenses for a single trial and refusing to suppress his cell phone records. And we conclude that the evidence was sufficient to support his convictions for child enticement and child abuse.

Affirmed.

---

[59] Brief for appellant at 46.

[60] *Eagle Bull, supra* note 58, 285 Neb. at 376-77, 827 N.W.2d at 472.

Miller-Lerman, J., concurring.

I concur in the result in this case, but I respectfully disagree with the majority's reading of Neb. Rev. Stat. § 28-320.02 (Cum. Supp. 2012). Under that statute, there are at least two timing issues, but in my view, the majority conflates them into one.

The most obvious timing question is: When did the enticing occur? I agree with the majority that to be guilty under

§ 28-320.02, the enticing occurs when the enticement to par-
ticipate in a contemplated illegal act is communicated.

Another timing question is: When is the contemplated act
that is the subject of the enticing to be performed? This tim-
ing question has obvious relevance in the present case because
after E.A. turned 16 years of age, the performance of the act
Knutson was proposing would not have been an illegal act
under Neb. Rev. Stat. § 28-319.01(1)(b) (Cum. Supp. 2012)
as charged.

As I read it, to be guilty of a violation of § 28-320.02, the
act that is the subject of the enticing communication must be
illegal on the day of its contemplated performance, not on the
day of the communication of the desire to perform an act. It
is an element of § 28-320.02 that the enticing be of an illegal
sexual act, not merely a sexual act. By its terms, § 28-320.02
criminalizes enticing an illegal act to be performed in futuro.

The majority states that "the relevant time for determining
whether the encouraged sexual act is illegal will generally
be when the defendant was engaged in the persuasion." As
I understand it, the majority interprets § 28-320.02 to mean
that in determining whether the encouraged sexual act is an
illegal act, the presumption will be made that the act would be
performed on the date of the communication. I do not believe
the presumption created by the majority is warranted by the
plain language of the statute, and I am not inclined to create
such presumption. Instead, I suggest that the proper analysis is
as follows:

Consistent with *State v. Rung*, 278 Neb. 855, 774 N.W.2d
621 (2009), the contemplated act must be illegal on the day
the act will have been performed, but the enticing or persuad-
ing offense under § 28-320.02 occurs and is completed on the
day the enticing or persuading is communicated. Whether the
contemplated act will be illegal when performed depends on
all the evidence, direct and indirect, relevant to the timing of
the act. The act's illegality is as of the day of contemplated
performance, not the day of its communication. In the pres-
ent case, the evidence was sufficient to submit the case to

the jury, and more particularly, there was sufficient evidence from which a reasonable jury could find that the contemplated act would be illegal on the day upon which it would have been performed.

For the foregoing reasons, although my analysis of the interpretation of § 28-320.02 differs from the majority, I concur.

————————————

James E. Robertson et al., appellants, v.
Jacobs Cattle Company, a partnership,
et al., appellees.

___ N.W.2d ___

Filed August 15, 2014.    No. S-13-860.

1. **Partnerships: Accounting: Appeal and Error.** An action for a partnership dissolution and accounting between partners is one in equity and is reviewed de novo on the record.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court resolves questions of law and fact independently of the trial court's determinations. But when credible evidence is in conflict on material issues of fact, an appellate court considers and may give weight to the fact the trial court observed the witnesses and accepted one version of the facts over another.
3. **Statutes.** Statutory interpretation presents a question of law.
4. **Partnerships.** The interpretation of a partnership agreement presents a question of law.
5. **Appeal and Error.** An appellate court reviews questions of law independently of the trial court's decision.

Appeal from the District Court for Valley County: Karin L. Noakes, Judge. Reversed and remanded with direction.

Patrick J. Nelson, of Law Office of Patrick J. Nelson, L.L.C., for appellants.

David A. Domina and Megan N. Mikolajczyk, of Domina Law Group, P.C., L.L.O., and Gregory G. Jensen for appellees.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.