IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BOGENREIF

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MITCHELL L. BOGENREIF, APPELLANT.

Filed March 24, 2015.    No. A-14-636.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, Paul E. Cooney, and Keenen Gallagher, Senior Certified Law Student, for appellant.

Doug Peterson, Attorney General, and Nathan A. Liss for appellee.

MOORE, Chief Judge, and IRWIN and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Mitchell L. Bogenreif appeals his conviction and sentence on charges of first degree sexual assault of a child and third degree sexual assault of a child. On appeal, Bogenreif challenges the district court's ruling on the admissibility of certain evidence, challenges the sufficiency of the evidence to support the convictions, asserts that he was denied effective assistance of trial counsel, and challenges the sentences imposed by the court. We find no merit to these assertions, and we affirm.

- 1 -

## II. BACKGROUND

The events giving rise to this action involve L.R., who was born in February 2006, and Bogenreif, who dated L.R.'s mother and had a son with her. In February 2014, L.R., then 8 years of age, met with law enforcement and representatives from the Lancaster County Attorney's office and the Advocacy Center, and indicated that she had been sexually abused by Bogenreif between March 2011 and June 2012.

Bogenreif was charged with first degree sexual assault of a child and third degree sexual assault of a child. In the Information, the State alleged that Bogenreif had subjected L.R. to both sexual penetration and sexual contact between April 1, 2011, and June 8, 2012.

Prior to trial, Bogenreif moved the court to sever the two charges and provide him with a separate trial on each count. He alleged that a joint trial on the two charges would be unfairly prejudicial because evidence would be admitted that would not be admissible in a trial of each offense separately. The court overruled the motion.

L.R. testified at trial. She testified that Bogenreif babysat her when she, her mother, and Bogenreif all lived together in an apartment in Lincoln. L.R. testified that on one occasion she observed Bogenreif watching an adult video, where "a grownup boy and a grownup girl" were "touching each other's private part." She testified that Bogenreif "pulled down" her clothes and her underwear and touched her "private part" with his bare hand and his "private part." She testified that this happened "[m]ore than one time." She testified that "something white came out of [Bogenreif's] private part." She also testified that on more than one occasion Bogenreif asked her to "suck [his private part] like a popsicle," and that "[i]t was just like the one girl was doing in the video." She testified that she did what Bogenreif asked.

The State also adduced evidence from family members, a psychologist, and a police investigator. In his defense, Bogenreif adduced evidence from a mental health practitioner, and another psychologist. In rebuttal, the State adduced additional evidence from a forensic interviewer with the Child Advocacy Center and a pediatrician. Additional details about the evidence adduced and the trial proceedings will be set forth as necessary in the Discussion section below.

At the conclusion of the trial, the jury returned a verdict finding Bogenreif guilty on each of the two charges. The court sentenced Bogenreif to a period of 40 to 60 years' imprisonment on the first degree sexual assault of a child conviction and a consecutive period of 4 to 5 years' imprisonment on the third degree sexual assault of a child conviction. This appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, Bogenreif has assigned numerous errors. First, he asserts that the district court erred in overruling his motion to sever the two counts. Second, he asserts that the court erred in permitting testimony regarding delayed disclosure. Third, he asserts that the court erred in allowing hearsay testimony from a pediatrician. Fourth, he asserts that the evidence adduced was not sufficient to sustain the convictions. Fifth, he asserts that the court erred in denying his motion for new trial. Sixth, he asserts that the court imposed excessive sentences. Finally, he asserts that he was denied effective assistance of trial counsel.

IV. ANALYSIS

1. MOTION TO SEVER

Bogenreif first asserts that the district court erred in denying his motion to sever and to have separate trials on the two charges brought against him. He asserts that he was prejudiced because evidence relating to one offense would not have been admissible in a separate trial of the other offense. We find this assertion to be without merit.

Neb. Rev. Stat. § 29-2002 (Reissue 2008) provides that two or more offenses may be charged in the same information if the offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Section 29-2002 also provides that the court may order separate trials of counts if it appears that a defendant would be prejudiced by joinder of the offenses.

A motion for separate trial is addressed to the sound discretion of the trial court, and its ruling on such a motion will not be disturbed in the absence of a showing of an abuse of discretion. *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014).

In this case, the charges brought against Bogenreif clearly were properly joined under § 29-2002 because they were of the same or similar character and based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. As the district court found, significant similarities exist between the facts of the underlying charges. Bogenreif was accused of subjecting the same victim, L.R., to both sexual contact and sexual penetration between April 2011 and June 2012; the evidence indicated that both happened more than once during that time, and always in the same apartment. The charges were "of the same or similar character" and joinable under § 29-2002. See *State v. Knutson, supra*.

The next question is whether the otherwise proper joinder prejudiced Bogenreif. The Nebraska Supreme Court has held that a defendant opposing joinder of charges has the burden of proving prejudice. *State v. Knutson, supra*; *State v. Garza*, 256 Neb. 752, 592 N.W.2d 485 (1999). To prevail on a severance argument, a defendant must demonstrate compelling, specific, and actual prejudice from the court's refusal to grant the motion to sever. *State v. Knutson, supra*. The defendant must show that the joint trial caused him such compelling prejudice that he was deprived of a fair trial. *Id.*

Bogenreif argues that he was prejudiced in this case because Neb. Evid. R. 404(2) would have prevented the State from adducing evidence of either crime in a separate trial of the other crime. He argues that because the jurors heard evidence of both alleged offenses together, "they may have used this evidence of the different acts improperly to conclude that he must have committed" one offense if he had committed the other. Brief for Appellant at 18.

As the State points out, however, the Nebraska Supreme Court has held that bad acts that form the factual setting of the crime in issue or that form an integral part of the crime charged are not covered under rule 404(2). See *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013); *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012). Rule 404(2) does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. *State v. Kelly*, 20 Neb. App. 871, 835 N.W.2d 79 (2013).

Where evidence of other crimes is so blended or connected with the one on trial so that proof of one incidentally involves the other or explains the circumstances or tends logically to prove any element of the crime charged, it is admissible as an integral part of the immediate context of the crime charged. *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006). When the other crimes evidence is so integrated, it is not extrinsic and therefore not governed by rule 404. *State v. Robinson, supra*. The State is entitled to present a coherent picture of the facts of the crime charged, and evidence of other conduct that forms an integral part of the crime charged is not rendered inadmissible merely because the acts are criminal in their own right. See *Id.*

We agree with the State that Bogenreif failed to demonstrate sufficient prejudice from the joinder of these two charges. The factual context for both of these offenses was so intertwined that testimony of either count would not have been inadmissible in a separate trial on each charge. The district court did not abuse its discretion in denying the motion to sever, and this assigned error is without merit.

## 2. EXPERT TESTIMONY REGARDING DELAYED DISCLOSURE

Bogenreif next asserts that the district court erred in allowing Dr. Barbara Sturgis to testify, as an expert, regarding delayed disclosure. Bogenreif's argument in this regard appears to be entirely based on the assertion that her testimony about "delayed disclosure" was not likely to assist the trier of fact because some of the potential jurors indicated during voir dire that they were familiar with the term and believed that children sometimes delay in reporting sexual assault. This assertion is meritless.

Neb. Evid. R. 702 provides that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. The admission of expert testimony is ordinarily within the discretion of the trial court, and its ruling will be upheld in the absence of an abuse of discretion. *State v. Duncan*, 265 Neb. 406, 657 N.W.2d 620 (2003). Four preliminary questions must be considered to determine whether an expert's testimony is admissible: (1) whether the witness qualifies as an expert; (2) whether the expert's testimony is relevant; (3) whether the expert's testimony will assist the trier of fact to understand the evidence or determine a controverted factual issue; and (4) whether the expert's testimony, even though relevant and otherwise admissible, should be excluded in light of Rule 403. *State v. Duncan, supra*.

Bogenreif's arguments on appeal are focused only on asserting that the testimony concerning delayed disclosure did not assist the trier of fact and should have been excluded under Rule 403.

First, Bogenreif argues that the testimony did not assist the trier of fact because "she merely repeated what jurors already knew." Brief for Appellant at 19. Bogenreif argues that during voir dire the State asked the potential jurors if they had heard the term "delayed reporting" and "multiple jurors" demonstrated an understanding of the term. *Id.* He also argues that when his counsel asked potential jurors if they believed it is common for children to delay reporting, every juror indicated that they believe children sometimes delay in reporting sexual assault.

Our review of the record is slightly different, however. During the State's questioning of potential jurors during voir dire, a number of jurors indicated, in answering various questions, that they or people they knew had been the victims of sexual misconduct and either never reported it or reported it after the passage of some time. The State then asked four specific potential jurors about their familiarity with the term "belated reporting." Of those four, only one was actually a member of the jury that was eventually impaneled. Of the jurors and alternates actually impaneled, thirteen were not specifically asked about delayed or belated reporting and did not express any familiarity with the term or its meaning.

Additionally, although Bogenreif's counsel asked the group of potential jurors how many thought it was common for children to delay reporting sexual assault and the record suggests that most if not all of the potential jurors raised their hands, there was no specific follow-up with any of them concerning the concept of "delayed reporting" or the substance of Dr. Sturgis' later testimony on the subject.

Dr. Sturgis presented testimony about how children talk about sexual assault allegations, whether they disclose incidents of sexual assault, and why it takes them some time to do so and there is delayed reporting. It is not apparent from the record that the substance of her testimony was something that the members of the jury had such familiarity with that the testimony did not assist them and was not admissible as expert testimony.

Dr. Sturgis' testimony in cases such as this concerning child victims and how they differ from adult victims and why they act the way they do with respect to reporting incidents of sexual assault has previously been addressed by the Nebraska Supreme Court. In *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992), the Supreme Court noted that Sturgis' testimony on this subject assisted the jury because few jurors have sufficient familiarity with child sexual abuse to understand the dynamics of a sexually abusive relationship and the behavior exhibited by sexually abused children is often contrary to what most adults would expect. The Supreme Court reaffirmed this conclusion in *State v. Fleming*, 280 Neb. 967, 792 N.W.2d 147 (2010). Contrary to Bogenreif's argument on appeal, the record in this case does not demonstrate that the jurors in this case had a level of knowledge making the testimony unhelpful.

Similarly, we find no merit to Bogenreif's assertion that the evidence was inadmissible under Rule 403. In that regard, Bogenreif argues that even if the testimony was "minimally relevant," there was substantial risk that the testimony suggested to the jury that delayed disclosure happened in this case and invaded the province of the jury on that issue. We disagree.

As noted, the testimony was not minimally relevant, but was helpful testimony to the jury. Dr. Sturgis specifically testified that delayed disclosure does not happen in all cases and specifically testified that she was not providing an opinion about how the victim in this case acted. The evidence was not inadmissible under Rule 403. This assigned error is without merit.

### 3. ALLEGED HEARSAY TESTIMONY

Bogenreif next asserts that the district court erred in allowing hearsay testimony during the testimony of a pediatrician who had interviewed L.R. Bogenreif argues that L.R.'s statements to the pediatrician were not made for purposes of diagnosis and treatment and were, as a result, inadmissible hearsay. We find no merit to this assertion.

The hearsay rule does not exclude from admission as evidence statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pains, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. See Neb. Evid. R. 803(3). To meet the requirements of this exception and be admissible the evidence must satisfactorily demonstrate that the circumstances under which the statement was made were such that the declarant's purpose in making the statement was to assist in the provision of medical diagnosis or treatment, that the declarant's statement was reasonably pertinent to such diagnosis or treatment, and further that a doctor would reasonably rely on such a statement. *State v. Vought*, 268 Neb. 316, 682 N.W.2d 284 (2004).

In the present case, Dr. Bleicher testified that she performed a sexual assault examination on L.R. in July 2012. She testified that she is one of two medical examiners at the Child Advocacy Center. She testified that sexual abuse examinations performed at the advocacy center "are very much full general examinations" and that the goal of the examination "is to assess whether there are any medical issues for the child with regard to any alleged abuse." She testified that the examinations include "a past medical history if there's a care provider available to give . . . the history" and a "head-to-toe examination to be sure everything else is alright with the child, and then . . . a more detailed genital exam."

She testified that the examination also involves an interview of the child "if they're of an age where" they can be interviewed. She testified that the purpose of the interview is to make sure there is "a clear medical history, any concerns that the child might have regarding their body and their wellness, and to try and assess what may have happened to them so [providers] get a medical understanding of whether [they] need to do testing for sexually transmitted diseases." She also testified that the purpose of the interview "is to identify if [the child] is at risk of medical complications from the contact she had." She testified that the physical examination is for the purpose of a complete medical assessment. Dr. Bleicher was specifically asked if the purpose of the interview of the child is "for diagnosis and treatment," and she answered, "Yes."

When Dr. Bleicher was asked what L.R. told her during the interview, Bogenreif's counsel imposed a hearsay objection. The court overruled the objection on the basis of the statement being for the purpose of medical diagnosis and treatment. Dr. Bleicher then testified that L.R. told her she had contact with a "sticky white material with her hands, but none in the genital area."

The testimony in this case demonstrates that the statement was made to the pediatrician performing a medical examination for purposes of diagnosis and treatment. The hearsay objection was properly overruled. See *State v. Vigil*, 283 Neb. 129, 810 N.W.2d 687 (2012); *State v. Vaught, supra*.

## 4. SUFFICIENCY OF EVIDENCE

Bogenreif next asserts that there was insufficient evidence to sustain a conviction on either charge. Bogenreif argues that "[n]o rational trier of fact could have found [him] guilty of the charged offenses." Brief for Appellant at 23. He argues that the State failed to present evidence proving he engaged in any sexual misconduct with L.R. We find this argument to be meritless.

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hale*, 290 Neb. 70, 858 N.W.2d 543 (2015).

A person is guilty of first degree sexual assault of a child if he or she is at least 19 years of age and subjects a person under 12 years of age to sexual penetration. Neb. Rev. Stat. § 28-319.01. Sexual penetration includes sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes. See Neb. Rev. Stat. § 28-318(6).

A person is guilty of third degree sexual assault of a child if he or she is at least 19 years of age and subjects a person who is 14 years of age or younger to sexual contact but does not cause serious personal injury to the victim. See Neb. Rev. Stat. § 28-320.01. Sexual contact includes the intentional touching of the victim's sexual or intimate parts, the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts, the touching by the victim of the actor's sexual or intimate parts or the clothing covering the immediate area thereof when such touching is intentionally caused by the actor, or the touching of a child with the actor's sexual or intimate parts on any part of the child's body for purposes of sexual assault of a child. See Neb. Rev. Stat. § 28-318(5).

In this case, the victim, L.R., testified about Bogenreif's actions and described both first degree sexual assault and third degree sexual assault. There is no dispute in this case that L.R. was 5 or 6 years of age at the time of the described conduct and that Bogenreif was over 19 years of age.

Bogenreif argues that L.R.'s testimony was not sufficient because there was no physical evidence of sexual assault, a test for sexually transmitted diseases was not performed, and Bogenreif had not admitted to the allegations when confronted over the telephone by L.R.'s mother. He argues that no rational trier of fact could have relied solely on the victim's testimony as the sole basis for finding him guilty because her statements were not corroborated and were inconsistent and unreliable. He argues that the victim had made inconsistent statements prior to trial and argues that the interviews of the victim may have been unduly suggestive.

Bogenreif's arguments amount to challenges to the credibility of the victim in this case and challenges to the credibility of the victim's testimony in court in front of the jury. We do not reweigh credibility matters on appeal, and if L.R.'s testimony at trial is believed, it is clearly sufficient to demonstrate that Bogenreif committed first degree sexual assault of L.R. and third degree sexual assault of L.R. This assigned error is meritless.

## 5. MOTION FOR NEW TRIAL

Bogenreif's assertions on appeal concerning the trial court's denial of his motion for new trial are all couched in terms of a new trial being warranted because of the alleged errors

concerning the admissibility of evidence and the sufficiency of the evidence already discussed above. Inasmuch as we have rejected his arguments concerning those alleged errors, we need not further address his assigned error concerning the motion for new trial; it is without merit.

## 6. EXCESSIVE SENTENCE

Bogenreif next asserts that the district court imposed an excessive sentence. He does not assert that the sentence imposed was outside of the relevant statutory limits for the offenses, but, rather, argues that the court failed to properly consider the relevant factors in determining an appropriate sentence. This argument lacks merit.

As the Nebraska Supreme Court recently noted, the principles of law governing review of sentences imposed in criminal cases are so familiar that they need not be repeated. *State v. Ortega*, 290 Neb. 172, ___ N.W.2d ___ (2015).

In this case, Bogenreif was convicted of first degree sexual assault of a child and third degree sexual assault of a child. First degree sexual assault of a child carries a potential range of sentences of a mandatory minimum 15 years' imprisonment to a maximum of life imprisonment; third degree sexual assault carries a potential range of sentences of up to 5 years' imprisonment and a fine of up to $10,000. See Neb. Rev. Stat. §§ 28-105; 28-319.01; 28-320.01. Bogenreif was sentenced to consecutive sentences of 40 to 60 years' imprisonment and 4 to 5 years' imprisonment, both well within the statutory limits.

The victim in this case was a child who was 5 or 6 years of age at the time of the offenses. She testified that Bogenreif touched her private part with his bare hands and had her perform fellatio on him, more than once, during a 14-month period of time. Despite Bogenreif's relatively tame criminal history, the sentence imposed was not an abuse of discretion.

## 7. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Bogenreif asserts that he was denied effective assistance of counsel at trial. Bogenreif lists nine particulars in which he asserts his trial counsel was ineffective and argues that he suffered prejudice as a result. He specifically asserts that the record from trial is insufficient to allow meaningful review of the issues and that he raises them to prevent a procedural waiver. See *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014).

The State agrees that most of Bogenreif's assertions of ineffective assistance of counsel cannot be resolved on the record presented. However, the State asserts that two of the allegations can be resolved on direct appeal.

First, Bogenreif asserts that trial counsel was ineffective for not making foundational objections when the State offered a series of photographic exhibits and L.R. did not testify how she was familiar with the location depicted in the exhibits. The photographs were of the apartment where the sexual assaults took place, although they were taken at a later point in time after the parties involved in this case had moved and the apartment was entirely empty.

A review of the record indicates that L.R. was first shown a photograph of the outside of the apartment building and testified that she was familiar with it because she used to live there. Then, when she was shown the other photographs of the inside of the apartment, she testified that the photographs depicted the "living room, hallway, and [her] toy room or bedroom"; a part of the "living room, part of the hallway, and part of [her brother's] and [her] mom's bedroom";

"[her and her] brother's bedroom, the bathroom, and the hallway"; and "part of [her mom and Bogenreif's] bedroom, part of the bathroom, and then part of the living room and kitchen, and then the hallway." It is apparent from L.R.'s testimony that sufficient foundation was laid to demonstrate that the photographs depicted the apartment in which she had lived and in which she testified the sexual assaults occurred.

Second, Bogenreif asserts that his trial counsel was ineffective for not objecting to the in-court identification of Bogenreif made by the State, rather than by L.R.

The identification Bogenreif complains of occurred during L.R.'s redirect testimony, when the State noted that she had testified about "Mitch" touching her and asking if she saw Mitch in the courtroom. After she nodded her head in the affirmative, the State asked her several times if she could point to him and "[w]here is he," to which L.R. did not respond. After the State asked L.R. numerous times to point out "Mitch," she finally pointed at someone in the courtroom, and the State asked the record to reflect that she had pointed to Bogenreif. At this point, Bogenreif's trial counsel did object that it was not clear if she had pointed "in the back row or . . . at the table." When the State then asked L.R. if she had been pointing "to the table," she nodded in the affirmative and indicated, "Yes." The State again asked to have the record reflect that she had identified Bogenreif, and Bogenreif's counsel objected that "as far as identification , . . that's an issue for the jury to decide."

The State argues that there was no ineffective assistance of counsel on this issue because Bogenreif was identified by several other witnesses and there was no dispute about his identity at trial. We are not persuaded by this argument, however, because although other witnesses identified Bogenreif, none of them was doing so in the context of whether he was the person who had sexually assaulted the victim. Identification by other witnesses was not comparable to the victim, L.R., being asked to identify the Mitch she had testified had touched her.

We conclude that, contrary to the State's assertion, the record is not sufficient to address this alleged error. It is not clear why counsel made any particular decision regarding his objections to the course of questioning and identification of Bogenreif during L.R.'s testimony. Similarly, we agree with the parties that the remainder of Bogenreif's assertions of ineffective assistance of trial counsel cannot adequately be addressed on the record presented.

## V. CONCLUSION

We find no merit to Bogenreif's assertions on appeal. We affirm.

AFFIRMED.