IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. NOYD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

RONALD D. NOYD, APPELLANT.

Filed October 6, 2015.    No. A-15-078.

Appeal from the District Court for York County: JAMES C. STECKER, Judge. Affirmed in part, sentence of restitution vacated, and cause remanded with directions.

Nancy G. Waldron, York County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Ronald D. Noyd appeals his conviction and sentence for conspiracy to commit theft by deception (greater than $1,500) in the district court for York County. He contends that the evidence was insufficient to convict him of the charge and that his sentence is excessive. Based on the reasons that follow, we affirm in part, vacate the sentence of restitution, and remand with directions.

## BACKGROUND

On August 15, 2013, an employee of Cornerstone Bank in York, Nebraska, contacted the local police department about a deposit made at one of the bank's ATM's. An envelope containing a deposit slip for $4,190 had been deposited into the ATM for an account belonging

to Ricky Turco. The envelope did not contain any cash or check. Immediately after the false deposit was made, money had been withdrawn from the same account. The account had a negative balance when the false deposit and withdrawals were made. The employee provided the police with the deposit envelope, the deposit slip, and still photographs and video surveillance obtained from the ATM's security camera showing the various transactions. The investigation that followed led to the discovery of Noyd's involvement in the crime and his arrest. The apparent motive for the crime was to obtain enough money to post bond for Turco who was in jail at the time.

The State charged Noyd with conspiracy to commit theft by deception (greater than $1,500), two counts of theft by deception ($500-$1,500), and attempted theft by deception (greater than $1,500). The State proceeded to trial against Noyd on the conspiracy charge. The remaining charges were apparently dismissed.

At trial, the State presented multiple witnesses. The State's first witness was York Police Officer John Wilmes, who was the officer who initially spoke with the bank employee and conducted the investigation. Wilmes testified, based on the materials provided to him and his investigation, that on August 13, 2013, at approximately 9:30 p.m., Becky Batterton and another individual (later identified as Noyd), made a false deposit at an ATM and immediately withdrew $500. On August 14, around 12:30 a.m., Batterton and Noyd returned and withdrew another $500. At around 8 a.m., Batterton went to Cornerstone Bank and tried to cash a check written to her for $1,600 from Ricky Turco, but the bank refused to cash it. Wilmes testified that video surveillance from the bank showed Batterton's transactions at the ATM, as well as another occurrence in which Turco, Batterton, and Noyd returned to the ATM after Turco was released from jail.

Wilmes testified that as part of his investigation, he had access to telephone calls that were recorded by the jail when Turco was incarcerated between August 10 and August 13, 2013. He testified he listened to telephone calls between Turco and an individual named Tina Elliott, and between Turco and Batterton, planning the false deposit and immediate cash withdrawals. He testified that the plans discussed during the telephone conversations were substantially similar to the way the false deposit and withdrawals took place.

Darcy Friesen, the bank employee who contacted Wilmes, also testified. She testified as to how an individual makes an ATM deposit and how and when the false deposit at issue was discovered by the bank. She also testified that the check Batterton tried to cash on August 14, 2013, was not cashed by the teller because the bank had discovered there was an issue with the deposit made the night before.

During Friesen's testimony, the State offered into evidence the surveillance videos from the ATM, as well as still photos from the ATM, showing the various transactions at the ATM involving Batterton and Noyd, as well as the return by Batterton, Noyd, and Turco to the ATM on the night of August 14 after Turco was released from jail.

Batterton testified that at the time of the events at issue, she and Turco were in a romantic relationship. She testified that on August 10, 2013, Turco was arrested and before being taken to jail he gave Batterton his checkbook, ATM card, and personal identification number. Batterton testified that Turco's bond was set at $2,500 and while Turco was in jail, she and Turco had telephone conversations about how they could get money to pay the bond. During Batterton's

testimony, the State played the recordings of telephone calls between Batterton and Turco, as well as one call between Turco and his business associate, Tina Elliott. The telephone calls revealed that a plan had been made to scam the bank out of money by making a false deposit into Turco's account and then withdrawing money from the account before the bank discovered the false deposit. Batterton admitted that this was the plan.

Batterton also testified about Noyd's involvement in the plan. She explained that prior to the false deposit being made, Noyd came to her house and they were talking about the deposit and she told him that she was not going to go through with it. Noyd told her that Turco was upset with her because she would not go through with the plan. Batterton testified that Noyd then told her that he would make the false deposit. She testified that the two of them got in her vehicle and headed for the ATM.

Batterton testified that when they got in her vehicle to go to the ATM the deposit envelope was on the dashboard and Noyd took the envelope and filled it out. He then handed Batterton the envelope and she put it in the ATM. Batterton testified that the deposit slip was in the envelope when Noyd handed her the envelope and the envelope was sealed. Batterton specifically testified that Noyd was in the passenger seat of her vehicle with her when the deposit was made, as well as when the two $500 withdrawals were made.

Batterton further testified that Noyd contributed some of his own money toward Turco's bond and that he came with her to get Turco released from jail. Batterton testified that after Turco was out of jail, the three of them went to the ATM to see if Turco could get any money from his account.

Bridget Driver, a forensic scientist for the Nebraska State Patrol Crime Lab, testified that she tested the deposit slip and envelope for fingerprints and she found numerous latent prints on both items that belonged to Noyd.

Turco also testified. He summarized the plan to obtain bond money and his communications with Batterton and Elliott. He testified that he only spoke with Batterton and Elliott on the telephone from jail and that he was unaware that Noyd was involved. Turco explained that after he was released from jail, he went with Batterton and Noyd to the ATM to check on his account. He also testified that he paid Noyd back for the money Noyd contributed toward his bond.

After the State rested, Noyd moved for a directed verdict, which the court overruled. Noyd took the stand and testified that at the time of the events in question, he and Batterton were friends, and Turco was an acquaintance. He testified that he was "pretty much staying at [Batterton's] house" and had been helping her move her consignment store to a new location and had been doing maintenance on her vehicle. He testified that Batterton never told him about a plan to get money from Cornerstone Bank and that he had no knowledge about the plan. When asked if he ever accompanied Batterton to an ATM machine, he responded that he rode with her most everywhere she went because he did not have a driver's license. He later testified that he went with Batterton to the ATM two or three times and she told him she was making deposits for Turco's business and making withdrawals to get him out of jail. When asked if he ever held a deposit envelope, he responded that he "carried all of [Batterton's] stuff in and out of the house and in and out of the truck all the time. I'm sure I did." He testified that he has never filled out a deposit slip. Noyd acknowledged that he used some of his own money for Turco's bond.

On cross-examination, Noyd denied filling out the deposit slip and envelope at issue. He testified that he possibly touched the deposit slip and envelope when he helped Turco move in with Batterton before Turco went to jail.

Following trial, the jury found Noyd guilty of conspiracy to commit theft by deception (greater than $1,500). The trial court accepted the jury's verdict and subsequently sentenced Noyd to 3 to 6 years' imprisonment and ordered him to pay $1,000 in restitution.

## ASSIGNMENTS OF ERROR

Noyd assigns that the evidence was insufficient to support his conviction for conspiracy to commit theft by deception (greater than $1,500) and that his sentence is excessive.

## STANDARD OF REVIEW

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. See *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013).

## ANALYSIS

*Sufficiency of Evidence.*

Noyd first assigns that the evidence was insufficient to support his conviction for conspiracy to commit theft by deception (greater than $1,500). When reviewing the sufficiency of the evidence to support a conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Nave*, 284 Neb. 477, 821 N.W.2d 723 (2012).

The State charged Noyd with conspiring to commit the crime of theft by deception (greater than $1,500). A person is guilty of criminal conspiracy if the person intends to promote or facilitate the commission of a felony, agrees with one or more persons to commit that felony, and then the person, or a coconspirator, commits an overt act furthering the conspiracy. *State v. Nave, supra.* See Neb. Rev. Stat. § 28-202 (Reissue 2008).

A person commits theft by deception (greater than $1,500) if "he obtains property of another by deception," which, as relevant here, means to obtain property, valued over $1,500, by intentionally "[c]reat[ing] or reinforc[ing] a false impression, including false impressions as to law, value, intention, or other state of mind." Neb. Rev. Stat. § 28-512 (Reissue 2008); Neb. Rev. Stat. § 28-518 (Reissue 2008).

We must affirm Noyd's conviction if there is evidence from which a rational jury could find beyond a reasonable doubt that he intended to promote or facilitate the crime of theft by

deception, that he agreed with others to commit that crime, and that he or another coconspirator committed an overt act in furtherance of the conspiracy.

We conclude that a rational jury could have found each of these elements beyond a reasonable doubt. First, there was sufficient evidence to show that Noyd intended to promote or facilitate the crime. Batterton testified that Noyd came to her house and was aware of the plan to make a false deposit, telling her that Turco was upset that Batterton would not carry out the plan. Noyd then told Batterton that he would make the false deposit.

Second, there was sufficient evidence to show that Noyd agreed with others to commit the crime. Batterton testified that she and Noyd discussed the plan and Batterton expressed that she did not want to go through with it. However, after Noyd told Batterton that he would make the false deposit, the two of them proceeded to Batterton's vehicle and drove to the ATM with the deposit envelope.

Third, there was sufficient evidence to show that Noyd or another coconspirator committed an overt act in furtherance of the conspiracy. Batterton testified that Noyd is the one who filled out the deposit envelope while they were in her vehicle. The evidence also showed that Noyd's fingerprints were found on the deposit slip and the deposit envelope. Further, Batterton, as a coconspirator, put the envelope inside the ATM while Noyd was in the vehicle. Noyd was also present in the vehicle both times that Batterton withdrew $500 from the ATM.

As such, the evidence is sufficient to uphold Noyd's conviction for conspiracy to commit theft by deception (greater than $1,500).

*Excessive Sentence.*

Noyd next assigns that his sentence of 3 to 6 years' imprisonment is excessive. Noyd was convicted of conspiracy to commit theft by deception (greater than $1,500), a Class III felony, punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both. See § 28-518; § 28-202 (Reissue 2008); § 28-105 (Reissue 2008). Noyd's sentence of 3 to 6 years' imprisonment is well within the statutory limits. Because Noyd's sentence of imprisonment is well within the statutory limits, we need only determine if the trial court abused its discretion in imposing such a sentence.

In imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Wills*, 285 Neb. 260, 826 N.W.2d 581 (2013). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Before sentencing Noyd, the trial court emphasized that Noyd was "not a stranger to this court," that this was the fourth time the court had seen him that year, and that his criminal record was "abysmal." The court also noted that this was the third time it had sentenced Noyd for a theft-related crime. The court further stated that Noyd refused to take responsibility for his actions, that probation was not appropriate, and that a lesser sentence would depreciate the seriousness of the crime or promote disrespect for the law. We conclude that the district court did not abuse its discretion in sentencing Noyd to 3 to 6 years' imprisonment.

However, in addition to the term of imprisonment, the trial court also ordered Noyd to pay $1,000 in restitution. Although Noyd does not take issue with the restitution portion of his sentence, the State contends that the court erred in ordering restitution because it did so without a restitution hearing, without considering Noyd's ability to pay, and without explaining the payment terms.

Neb. Rev. Stat. § 29-2280 et seq. (Reissue 2008) vests trial courts with the authority to order restitution for actual damages sustained by the victim of a crime for which the defendant is convicted. *State v. Mick*, 19 Neb. App. 521, 808 N.W.2d 663 (2012). In imposing restitution, § 29-2281 provides, in part, the following parameters:

> To determine the amount of restitution, the court may hold a hearing at the time of sentencing. The amount of restitution shall be based on the actual damages sustained by the victim and shall be supported by evidence which shall become a part of the court record. The court shall consider the defendant's earning ability, employment status, financial resources, and family or other legal obligations and shall balance such considerations against the obligation to the victim. . . .The court may order that restitution be made immediately, in specified installments, or within a specified period of time not to exceed five years after the date of judgment or defendant's final release date from imprisonment, whichever is later.

Pursuant to § 29-2281, before restitution can be properly ordered, the trial court must consider: (1) whether restitution should be ordered, (2) the amount of actual damages sustained by the victim or a crime, and (3) the amount of restitution a criminal defendant is capable of paying. *State v. Mick, supra.*

Having reviewed the record in this case, we find that the record does not indicate that the trial court considered the factors mandated by § 29-2281. Therefore, the trial court erred in ordering restitution, and as such, we vacate the trial court's order regarding restitution and remand the matter to the trial court for resentencing regarding the restitution portion of Noyd's sentence, taking into consideration the statutory factors set forth in § 29-2281.

## CONCLUSION

We conclude that there was sufficient evidence to support Noyd's conviction for conspiracy to commit theft by deception (greater than $1,500) and that the trial court did not impose an excessive sentence of incarceration. We further conclude that the trial court erred in ordering restitution without considering the factors set forth in § 29-2281. Thus, we affirm Noyd's conviction and affirm the incarceration portion of the sentence. The portion of the sentence regarding restitution is vacated, and the cause is remanded for proceedings consistent with this opinion.

AFFIRMED IN PART, SENTENCE OF RESTITUTION VACATED, AND CAUSE REMANDED WITH DIRECTIONS.