IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HAWKS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JEFF A. HAWKS, APPELLANT.

Filed January 10, 2017.    Nos. A-16-387, A-16-388.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

INBODY and PIRTLE, Judges, and MCCORMACK, Retired Justice.

INBODY, Judge.

## INTRODUCTION

Jeff A. Hawks appeals his conviction for sexual assault of a child in the third degree regarding the victim Alex W., claiming there was insufficient evidence to support a guilty verdict. Further, Hawks contends the trial court erred in consolidating the cases involving Alex and Andrew H., and in allowing the evidence of uncharged conduct with Tyler W., causing prejudice against him and denying him a fair trial and a reasonable acquittal prospect.

## STATEMENT OF FACTS

### HAWKS

Hawks was a youth baseball coach in Lincoln, Nebraska. In addition to coaching youth baseball teams, Hawks would also have private coaching sessions for baseball. At the time of trial, Hawks indicated he was 34 years old.

Alex was born on March 26, 1999. Hawks was Alex's youth baseball coach beginning at age 9 and Alex was part of Hawks' team for 3½ years until parental conflict caused him to leave the team. Alex testified that he viewed Hawks as a mentor and that they got along well. Alex indicated that after he left Hawks' team, Hawks stayed in contact with him through text messages and that they did a couple of training sessions together at the facility that Alex's father owned. Alex testified that Hawks would come to his home every couple of weeks, sometimes on his own and sometimes after Alex invited him. At trial, Alex testified that Hawks touched him inappropriately four times in his bedroom.

At trial, Alex stated the first time occurred after the first of the year and before the beginning of April 2012 before he started his "13's" baseball season in late March or early April 2012. Alex stated that Hawks came over to hang out while Alex's mother was at home, that they started rough housing and that it carried over into Alex's bedroom. Hawks locked the door and they continued to wrestle. When Alex got tired, he laid down across the bed and Hawks laid lengthwise across Alex's chest. Hawks started to reach for Alex's pants' waistband and started rubbing on the top of Alex's pants, including his penis and testicles over his pants. Hawks then went under Alex's underwear, rubbing Alex's penis and testicles. This incident lasted a couple of minutes.

Alex testified the second time occurred a few weeks later, similar to the first incident. Alex and Hawks started wrestling in the living room and continued to wrestle into Alex's bedroom. Hawks again shut the door and locked it and the two continued to wrestle. When Alex tired, he laid on his bed. Hawks laid across Alex, and began rubbing Alex's penis and testicles under his shorts and on top of his underwear. Hawks also went under Alex's underwear and rubbed Alex's penis and testicles. Hawks told Alex to "[j]ust let it happen" and the incident lasted about 30 seconds to a minute.

The third incident occurred about a week or two later, when Alex and Hawks were talking in the kitchen and Hawks had the idea for them to go to Alex's bedroom. When they went into the bedroom, Hawks shut the door and locked it. The two wrestled for about 15 minutes and then they got on the bed. Hawks started to do the same things he had before. At trial, Alex stated that "I tried to fight him off that time but he convinced me, he said just let it happen." Hawks rubbed Alex's penis and testicles under his shorts and above his underwear and then rubbed his penis and testicles under his underwear.

The fourth incident occurred before April 2012 in Alex's bedroom when Hawks said he was going to do a physical body exam on Alex. Alex testified that the door was locked and that he was laying on his bed lengthwise. Hawks told Alex to take off his shirt and shorts, leaving Alex just in his underwear. During the examination, Hawks began to feel Alex's arms and legs and do leg stretches to test flexibility. Hawks then began feeling around Alex's abdominal area and groin, feeling Alex's inner thigh, working his way towards Alex's genital area. Hawks went underneath Alex's underwear and cupped Alex's testicles and also touched Alex's penis by rubbing it under the underwear. Alex also testified that Hawks asked him about erections and masturbation.

There was some question regarding the order of the incidents, specifically whether the examination took place after the third incident. Alex stated he may have gotten the order mixed up but he was sure that both instances happened.

Moreover, Alex testified that after the incidents occurred, Hawks would send text messages to Alex, but that he would not respond to Hawks' messages. However, if Alex would not respond to Hawks' messages, Hawks would text Alex's parents to inquire about Alex or to ask the parents to tell Alex to respond.

Alex also testified that he initially did not tell his parents about the abuse because of the close relationship his parents had with Hawks. Upon telling his parents, Alex testified that the Child Advocacy Center helped him create a timeline of the incidents, but he knew that they occurred after the beginning of the year in 2012 and before the start of the baseball season.

### ANDREW'S TRIAL TESTIMONY

Andrew was born on August 23, 2002. Hawks coached Andrew's little brother's baseball team. Hawks assisted Andrew with pitching and hitting, and Andrew had three private baseball training sessions. Andrew testified that he trusted Hawks. The first session occurred on August 23, 2014, Andrew's 12th birthday, at an indoor facility. During the session, Hawks stretched Andrew.

At trial, Andrew testified that Hawks stretched near his groin area and that Hawks said he "needed to check if I had testosterone running through my body." Hawks put his hand on Andrew's penis and said "that if I try and get an erection because if I had an erection I would have testosterone in my body and so then he had moved his hands around trying to get erection to happen" [sic]. Hawks put his hand on Andrew's penis, moving it around back and forth, touching over Andrew's shorts for 10-20 seconds.

Andrew testified that while stretching in the second session, Hawks said he was going to check Andrew's testosterone again and he moved around Andrew's penis, pushing it down, moving it around, and flipping it back and forth with two fingers for 10-20 seconds. At the third session around November or December 2014, Hawks told Andrew he was going to check for testosterone and Hawks asked Andrew if he remembered what he was going to do. Hawks then put his hand on Andrew's penis, pushing it down and flipping it back and forth for 10-20 seconds. Andrew got an erection during the third session.

### TYLER'S TRIAL TESTIMONY

Tyler was born on February 10, 2000. Hawks coached Tyler's younger brother's baseball team. Hawks and Tyler had three private coaching sessions together. The first session took place on December 24, 2014. Tyler testified that during the first session, Hawks stretched Tyler, got close to his groin and inner thigh, and "a couple times he took his hand and kind of in a smooth motion went over my penis like just a couple times" [sic] over his clothes. Tyler stated that Hawks did the same kind of motion and touching in another stretching position. After the session, Tyler told his mother he did not want another session.

Tyler went back for a second session on December 26, 2014, because Tyler's mother thought it would be good for him to go again. At the session, Hawks and Tyler did some hitting and stretching. During the stretching, Hawks touched Tyler's inner thigh and did a smooth motion

over the penis area two or three times with each stretch. Tyler again told his mother he did not want to go back.

Tyler had a third session with Hawks where they stretched, hit, and pitched. During the stretching, Hawks touched Tyler's penis over his clothes two or three times during one stretch. Following the session, Tyler told his mother he did not want to go back.

## TRIAL JOINDER

Initially, the two cases involving the victims Alex and Andrew were filed separately. Following the information being filed involving Andrew, the State filed a motion to join for trial, claiming the offenses were of the same or similar character, were based on the same act or transaction, involved the same witnesses, evidence, and testimony, and that they were appropriate for consolidation under Neb. Rev. Stat. § 29-2002 (Reissue 2008). The trial court granted the motion, stating that the two cases were identical, that the victims would be allowed to testify in each other's case, and that "virtually the same witnesses, evidence and testimony will be offered against [Hawks] in each case."

## RULE 414 EVIDENCE ADMISSION

The State also filed a notice of intent to offer evidence of Hawks' commission of other sexual assault offenses, including the testimony of Tyler. The court analyzed and performed a balancing test to determine whether the risk of prejudice substantially outweighed the probative value of the evidence. Specific to Tyler, the trial court determined that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice and evidence of Tyler being sexually assaulted by Hawks was conditionally admitted during the trials involving Andrew and Alex.

## VERDICT

At the conclusion of the trial, the jury determined Hawks was guilty of sexual assault of a child in the third degree involving both Andrew and Alex. For the case involving the victim Andrew, Hawks was sentenced to the Nebraska Department of Correctional Services for a period of not less than 4 years nor more than 5 years. Hawks was given 42 days' credit for time served. Additionally, for the case involving the victim Alex, Hawks was sentenced to the Nebraska Department of Correctional Services for a period of not less than 4 years nor more than 5 years. The sentences were ordered to run consecutively.

## ASSIGNMENTS OF ERROR

On appeal, Hawks' assignments of error, consolidated and restated, are that the evidence was insufficient to support the conviction involving Alex, and that the trial court erred in consolidating the cases for trial and allowing evidence of uncharged conduct, resulting in prejudice against Hawks that denied him a fair trial and a reasonable acquittal prospect.

## STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the

evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016).

A motion for a separate trial is addressed to the sound discretion of the trial court, and its ruling on such motion will not be disturbed in the absence of a showing of an abuse of discretion. *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014), *cert. denied* ___ U.S. ___, 135 S. Ct. 1505, 191 L. Ed. 2d 442 (2015).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Draper*, 295 Neb. 88, 886 N.W.2d 266 (2016). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Draper, supra*.

## ANALYSIS

### INSUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT

Hawks contends that the evidence presented at trial was insufficient to support the verdict in the Alex case. Specifically, Hawks argues that an essential element of the offense was that the sexual contact took place when Alex was 14 years of age or younger and that Alex materially changed his story regarding when the alleged sexual contact took place, which should have caused the trial court to discredit Alex's testimony as a matter of law.

Neb. Rev. Stat. § 28-320.01 (Cum. Supp. 2004) provides that a person commits sexual assault of a child in the third degree if he or she is at least 19 years of age or older and subjects another person 14 years of age or younger to sexual contact but does not cause serious personal injury to the victim. "Sexual contact" is defined in Neb. Rev. Stat. § 28-318(5) (Cum. Supp. 2014) as the "the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts." Subsection (5) also states that sexual contact "shall only include such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party." § 28-318(5). "Intimate parts" are defined in § 28-318(2) as "the genital area, groin, inner thighs, buttocks, or breasts."

Hawks' arguments on appeal regarding insufficiency of the evidence are entirely challenges to the witnesses' credibility, which it is well established that we will not reweigh or pass on. Viewed in the light most favorable to the State, the evidence indicates that Hawks, when he was approximately 30 years of age, placed his hand on top of Alex's shorts and underwear on one occasion, underneath Alex's shorts and on top of Alex's underwear on two occasions, and underneath Alex's underwear on four occasions, when Alex was approximately 13 years of age, and made contact with Alex's penis and testicles with his hand. Viewed in the light most favorable to the State, the evidence indicates that Hawks did this several times in Alex's bedroom with the

door closed and locked, while Alex and Hawks were laying on his bed, and that Hawks laid across Alex while touching his penis and testicles.

Viewed in the light most favorable to the State, Alex's testimony satisfies all of the statutory elements necessary to sustain a conviction. We cannot say that no rational trier of fact could have found the elements proven beyond a reasonable doubt. This assignment of error is meritless.

CONSOLIDATION OF CASES FOR TRIAL

At trial, the district court, in reliance upon § 29-2002(2), indicated that the charges involving Alex and Andrew were identical and granted the State's motion to join for trial. Hawks argues the trial court erred in consolidating the two cases for trial and that the consolidation prejudiced him in his defense of the separate cases. Hawks contends "[t]he trial issue in the [Andrew] case was whether Hawks intentionally touched and manipulated [Andrew]'s penis while engaging in stretching exercises during a private coaching session for purposes of sexual gratification[]" while "[t]he trial issue in the [Alex] case was whether he essentially sexually assaulted [Alex] in his bedroom at the family home." In particular, Hawks contends that the incidents involving Alex are different from those involving Andrew because Alex was older than Andrew and the incidents involving Alex did not include coaching, training, sports exercises, or anything related to baseball.

There is no constitutional right to a separate trial for different charges. *State v. Knutson*, 288 Neb. 823, 830, 852 N.W.2d 307 (2014), *cert. denied* ___ U.S. ___, 135 S. Ct. 1505, 191 L. Ed. 2d 442 (2015). Rather, § 29-2002 controls whether charges for trial are joined or separated. *State v. Knutson, supra*.

Section 29-2002 states:

(1) Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

(2) The court may order two or more indictments, informations, or complaints, or any combination thereof, to be tried together if the offenses could have been joined in a single indictment, information, or complaint . . . . The procedure shall be the same as if the prosecution were under such single indictment, information, or complaint.

(3) If it appears that a defendant or the state would be prejudiced by a joinder of offenses in an indictment, information, or complaint or by such joinder of offenses in separate indictments, informations, or complaints for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

In deciding whether the offenses were properly joined under § 29-2002, we must determine (1) whether the offenses were related and joinable and (2) whether an otherwise proper joinder was prejudicial to the defendant. *State v. Knutson, supra*.

In *State v. Knutson*, *supra*, Knutson was charged with five counts of sexual assault and child abuse involving four minor girls. Knutson alleged that the separate incidents involving the four girls should have been severed at trial; however, the trial court determined that the offenses were properly joined because they were of the same or a similar character, as Knutson taught, tutored, or coached each of the victims. More specifically, the trial court indicated that there were significant similarities because all of the victims attended the school where Knutson taught, each of the victims was around the same age at the time of the offenses, and Knutson maintained a position of trust with each of the victims.

In this instance, the informations indicate that the charges are of the same or similar character, as both cases charge Hawks with sexual assault of a child in the third degree under § 28-320.01(3). Moreover, Alex and Andrew were at or around the age of 12 at the time of the offenses. Testimony at trial also indicated that both Alex and Andrew considered Hawks to be a mentor or trusted him; that Hawks coached or did individual training sessions with both Alex and Andrew; that Hawks performed stretching exercises on both Alex and Andrew; and that Hawks talked to Alex and Andrew about sexual subjects, such as erections, masturbation, or testosterone. Therefore, we conclude the charges were joinable as they were of the same or similar character under § 29-2002(1).

Next, we must determine whether an otherwise proper joinder was prejudicial to Hawks. See, *State v. Knutson, supra*. See, also, § 29-2002(3). The burden of proving prejudice is on the defendant opposing joinder. *State v. Knutson*, *supra*. The Nebraska Supreme Court has indicated that there is no prejudice if the charges are "simple and distinct from the evidence of other offenses" and if the jury can "separate the charges and associated evidence, without combining evidence of other charges to find guilt on a charge that it would not have found if the court had ordered separate trials." *Id.* at 834, 852 N.W.2d at 318.

Here, although the cases were sufficiently similar in nature, the evidence presented at trial was simple and distinct for each charge relating to Alex and Andrew. Moreover, Hawks has not adequately met the burden to show that he was prejudiced by the joinder. Therefore, we find that this assignment of error is without merit.

ADMISSION OF UNCHARGED CONDUCT

Hawks asserts the trial court erred in admitting uncharged conduct involving Tyler under Neb. Rev. Stat. § 27-414 (Cum. Supp. 2012). Hawks claims Tyler's testimony was confusing because Tyler initially told law enforcement there was no inappropriate touching; at deposition, Tyler said there may have been two or three brief touches by Hawks across Tyler's penis while being stretched; and at trial, there were more sessions and additional penis touching. Hawks contends the probative value regarding Tyler's testimony was outweighed by its prejudicial effect and should have been excluded.

Section 27-414(1) indicates that evidence of a criminal defendant's commission of another sexual assault offense is admissible "if there is clear and convincing evidence otherwise admissible under the Nebraska Evidence Rules that the accused committed the other offense or offenses. If admissible, such evidence may be considered for its bearing on any matter to which it is relevant." In determining whether to admit such evidence, the trial court must also balance the evidence and

determine whether the risk of prejudice substantially outweighs the probative value of the evidence. § 27-414(3). In the trial court's assessment, it may consider: "(a) the probability that the other offense occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the crime charged." § 27-414(3).

In this case, the record supports the trial court's decision that the State presented sufficient evidence to clearly and convincingly establish that Hawks sexually assaulted Tyler. The evidence indicates that Tyler was around the age of 14 when he was the victim of Hawks' sexual assault, that Hawks provided personal baseball coaching lessons to Tyler, and that while Hawks was stretching Tyler he touched Tyler's groin and penis. The trial court acknowledged the need to balance whether the risk of prejudice substantially outweighed the probative value of the evidence, and determined Tyler's testimony was admissible. Although Hawks argues there are alleged inconsistencies in Tyler's testimony, we cannot find that the trial court erred in finding Tyler's testimony sufficient to satisfy § 27-414.

## CONCLUSION

We reject Hawks' claim that there was insufficient evidence to support his conviction involving the victim Alex. Further, we reject Hawks' contention that the trial court erred in consolidating the cases involving Alex and Andrew and in allowing the evidence of uncharged conduct with Tyler. Therefore, we determine there was not prejudice against Hawks and reject the claim that he was denied a fair trial and a reasonable acquittal prospect.

AFFIRMED.